DECISION
{¶ 1} Relator, Montgomery County Board of County Commissioners, filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order, which granted emporary total disability compensation to respondent, Douglas L. Dotson ("claimant"), and ordering the commission to find that claimant is not entitled to that compensation.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.) No objections to that decision have been filed.
 {¶ 3} Finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ is denied.
Writ of mandamus denied.
BRYANT and BROWN, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Montgomery County : Board of County Commissioners, : Relator, :
v. : No. 05AP-1036
Industrial Commission of Ohio : and Douglas L. Dotson, : Respondents. :
 MAGISTRATE'S DECISION Rendered on May 22, 2006 Mathias H. Heck, Jr., Prosecuting Attorney, and Laura L.Wilson, for relator.
Jim Petro, Attorney General, and Derrick Knapp, for respondent Industrial Commission of Ohio.
Barkan Neff Handelman Meizlish, L.L.P., and Robert E.DeRose, for respondent Douglas L. Dotson.
 IN MANDAMUS {¶ 4} Relator, Montgomery County Board of County Commissioners, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which Relator, granted temporary total disability ("TTD") compensation to respondent Douglas L. Dotson ("claimant"), and ordering the commission to find that claimant is not entitled to that compensation.
Findings of Fact:
 {¶ 5} 1. Claimant sustained a work-related injury on September 29, 1999, and his claim was originally allowed for the following conditions: "open wound of scalp; contusion to scalp; sprain of neck; sprain left shoulder; sprain thoracic region; sprain left knee."
 {¶ 6} 2. Claimant returned to work with relator but terminated his employment as of March 10, 2000. According to claimant's affidavit, he left his employment with relator for the following reasons:
I, Douglas Dotson, state that at the time of my injury on 9-299-9 that we were rushing to meet newly imposed standards that required us to run more loads and haul more pounds of trash and that was primarily responsible for my accident. Following my accident I was sent by my supervisor to doctors picked out by Montgomery County and all they ever did was prescribe medication, send me back to work and failed to explore the reason for my pain. After the accident I was nagged by my supervisor for causing $60,000.00 worth of damage in the accident. I was written up for minor incidents for which other workers suffered no repercussion and after the accident it appeared as if my supervisors were trying to build up a case history to use to terminate me. My neck and shoulder pain persisted, the work load continued to increase. I had more difficulty completing my job satisfactorily, and it simply reached the point where a combination of the pain and the pressure prompted me to resign and move from the area. Had it not been for this accident, my injures and the limitations imposed upon my by the injuries, I would not have resigned and left this job.
 {¶ 7} 3. On July 27, 2004, claimant filed a C-86 motion requesting that his claim be additionally allowed for the following conditions: "disc herniation at C6-7, left supraspinatus tendon tear."
 {¶ 8} 4. Claimant's motion was originally denied by a district hearing officer ("DHO") on September 28, 2004; however, claimant's claim was eventually allowed for disc herniation at C6-7 and left supraspinatus tendon tear by order of the staff hearing officer ("SHO") dated November 4, 2004. The SHO relied upon the June 30, 2004 report of claimant's treating physician Steven W. Howe, D.O., and the September 13, 2004 independent medical evaluation performed by Richard M. Ward, M.D. In his report, Dr. Ward concluded as follows:
* * * Based upon the history of the injury, the severity of the injury and the fact that he has continued to have pain in his neck with radicular pain radiating into his left upper extremity, the fact that he has had continued pain and limitation of motion in his left shoulder, I believe it is a medical probability that the supraspinatus tendon tear in the left shoulder and the herniated nucleus pulposus at the C6-C7 level are a direct result of the accident in question. Again, this is based upon the fact that he denies ever having had problems with his neck or left shoulder prior to that accident, the severity of the accident and the continuation of the symptoms of pain and stiffness in both his neck and left shoulder combined with the MRI findings. Because of these facts I believe he should have the additional allowances for the injury that occurred on 9-29-99 of HNP C6-C7 and tear left shoulder supraspinatus tendon. Again, in my opinion, these two additional conditions are solely the result of the accident that occurred as described on 9-29-99.
 {¶ 9} 5. Relator's appeal was refused by order of the commission mailed December 18, 2004.
 {¶ 10} 6. On December 9, 2004, claimant filed a motion requesting the payment of TTD compensation beginning April 10, 2004 and continuing. Claimant submitted the December 2, 2004 C-84 certifying the period of TTD based upon the newly allowed conditions.
 {¶ 11} 7. The record also contains the February 22, 2005 report of Rammy S. Gold, M.D., who examined claimant and reviewed his MRI scan. Dr. Gold noted that claimant has mild restriction in extension of his cervical spine and that he has weakness about his left shoulder as well as significant pain with external rotation of his left shoulder. Dr. Gold recommended that claimant have treatment for his rotator cuff disease.
 {¶ 12} 8. The record also contains the January 26, 2005 physician review of Robert L. Brown, M.D., who opined that more evidence was needed before he could determine whether or not claimant was unable to work due to the allowed conditions in the claim.
 {¶ 13} 9. Claimant's motion was heard before a DHO on March 31, 2005, and was granted as follows:
The District Hearing Officer relies upon the 12/02/2004 C-84 from Dr. Howe and the injured worker's testimony that he had to quit his truck driving job in April 2004 due to the use of narcotic drugs for the allowed conditions in this claim.
The District Hearing Officer further notes that the claim was allowed for disc herniation C6-7 on 11/04/2004.
All evidence was reviewed and considered.
 {¶ 14} 10. Relator appealed and the matter was heard before an SHO on May 12, 2005, and resulted in an order affirming the prior DHO order granting TTD compensation as follows:
It is the finding of the Staff Hearing Officer that temporary total disability compensation is awarded from 04/10/2004 to 03/14/2005 and to continue upon submission of medical evidence.
This award is based on the extensive office notes on file from Dr. Howe's office the C-84 reports from Dr. Steve Howe dated 12/02/2004 and 04/22/2005, the 02/22/2005 narrative medical report from Dr. Gold, the orthopedic report from Dr. Richard Ward dated 09/13/2004 and the Staff Hearing Officer order of 11/04/2004 (allowing more significant and serious conditions in this claim). This evidence indicates new and changed circumstances have occurred warranting a reinstatement of temporary total disability benefits. The evidence indicates the injured worker is unable to physically return to his former position of employment and has not reached maximum medical improvement.
All relevant evidence was reviewed and considered including the review of Dr. Brown.
 {¶ 15} 11. Relator's appeal was refused by order of the commission mailed May 27, 2005.
 {¶ 16} 12. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 17} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 18} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephensonv. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 19} In this mandamus action, relator argues that the evidence in the record does not support the finding that any temporary disability keeping claimant from working is related to the allowed conditions in the claim. Specifically, relator contends that Dr. Ward's report is fatally flawed because Dr. Ward stated that claimant has a tear in his rotator cuff as noted by the March 31, 2004 MRI, when the results of that MRI actually indicate that no tear was found. As such, relator contends that Dr. Ward's report should be completely stricken from the record. Furthermore, relator argues that Dr. Ward's report, as well as Dr. Gold's reports and office notes, merely report the treatment that claimant received and provide additional diagnoses without ever discussing the issue of causation. Lastly, relator points to the report of Dr. Brown who opined that there was not enough evidence to determine the issue of causation as well as the August 12, 2004 report of Dr. Bell who opined that there is no evidence that claimant's current injuries are causally related to the 1999 industrial injury and the April 22, 2004 report of Dr. Engle who also opined that claimant's current symptoms were unrelated to the 1999 industrial injury.
 {¶ 20} A review of the March 31, 2004 MRI, as interpreted by Kevin E. Legendre, M.D., provides the following:
Detail is somewhat limited on several images due to patient body habitus. * * * There is evidence of sprain of the inferior AC joint ligament/capsule. * * *
There is significant tendinosis [sic] of the distal supraspinatus tendon with suspected intrasubstance tear beginning 4 mm proximal to the tendon insertion on the humerus and continuing medially over a distance of 14 mm. This finding could extend somewhat to the articular surface of the tendon constituting a partial-thickness tear, however, due to patient body habitus detail is somewhat limited. The superior aspect of the supraspinatus tendon remains intact and no full-thickness rotator cuff tear is seen. The remainder of the rotator cuff is within normal limits.
The long head biceps tendon is not well visualized on axial images but appears in normal position on coronal sequences. The intraarticular portion of the biceps tendon and including the biceps tendon anchor at the superior glenoid labrum is never clearly visualized and tear in this area cannot be excluded. No definite tear of the glenoid labrum is demonstrated. No muscle atrophy is seen.
 {¶ 21} As indicated above, Dr. Legendre's interpretation of the MRI does include his opinion that significant tendonitis is present with a suspected intra-substance which could extend to the articular surface of the tendon constituting a partial-thickness tear. Dr. Legendre did note that the superior aspect of claimant's supraspinatus tendon remained intact and that there was no full-thickness rotator cuff tear visible. Further, Dr. Legendre noted that claimant's superior glenoid labrum was not clearly visualized and that a tear in this area could not be excluded; however, he noted that there was no definite tear of the glenoid labrum demonstrated. While Dr. Legendre does rule out a full-thickness rotator cuff tear, he does not rule out a partial-thickness tear as above indicated. As such, the magistrate finds that Dr. Ward's interpretation of the MRI is not contraindicated by Dr. Legendre's interpretation of the MRI. Therefore, this magistrate finds that the commission did not abuse its discretion by relying upon the September 13, 2004 report of Dr. Ward.
 {¶ 22} Relator argues further that there simply is no evidence that any problems claimant is currently having are in any way related to the 1999 industrial injury. However, this magistrate notes that the commission specifically found that claimant's claim should be additionally allowed for disc herniation at C6-7 and left supraspinatus tendon tear. If relator believes that there is no causal connection between these allowed conditions and the injury, relator should challenge this finding pursuant to an R.C. 4123.512 appeal. The MRI, Dr. Ward's report, and Dr. Howe's report and office notes indicate that claimant has had ongoing problems ever since the 1999 industrial injury. The commission relied upon those reports as well as the claimant's testimony and concluded that not only should his claim be additionally allowed for disc herniation at C6-7 and left supraspinatus tendon tear, but, also, that claimant's current inability to work was a direct result of those newly allowed conditions. The commission cited the medical evidence upon which it relied, which this magistrate has found constitutes some evidence, and granted the requested period of TTD compensation. Inasmuch as relator's challenges to the medical evidence fail and claimant's claim was additionally allowed for those new conditions, the magistrate finds that there is some evidence in the record upon which the commission relied supporting the commission's determination that the newly allowed conditions are causally related to the 1999 industrial injury and that the current period of disability is related to those newly allowed conditions.
 {¶ 23} Based on the foregoing, it is this magistrate's conclusion that relator has failed to demonstrate that the commission abused its discretion in additionally allowing claimant's claim for disc herniation at C6-7 and left supraspinatus tendon tear and in granting the requested period of TTD compensation. As such, it is this magistrate's conclusion that this court should deny relator's request for a writ of mandamus.